IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs December 16, 2020

## STATE OF TENNESSEE v. BRYANT LAMONT THOMAS

**Appeal from the Circuit Court for Anderson County**
**No. B8C00153        Michael S. Pemberton, Judge[1]**

_____

### No. E2019-01974-CCA-R3-CD

_____

Defendant, Bryant Lamont Thomas, was employed as a probation officer with the Tennessee Department of Correction. He pled guilty to Class E felony sexual contact with a probationer. Following a sentencing hearing, the trial court denied Defendant judicial diversion and sentenced Defendant to two years to be served on supervised probation. Defendant claims the court abused its discretion by denying diversion. After a review of the record and applicable law, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Matthew T. Tuck, Oak Ridge, Tennessee, (on appeal) and John C. Barnes, Knoxville, Tennessee, (at hearing) for the appellant, Bryant Lamont Thomas.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Dave S. Clark, District Attorney General; and Emily F. Abbott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On April 3, 2018, the Anderson County Grand Jury indicted Defendant for rape (count one) and sexual contact with a probationer or parolee (count two). *See* Tenn. Code Ann. §§ 39-13-503(a), 39-16-409(b) (2017). At the plea submission hearing, Defendant admitted to the factual basis provided by the State including that he solicited

---

[1] The guilty plea was accepted by Judge Donald R. Elledge. Thereafter Judge Elledge recused, and Judge Pemberton, sitting by interchange, conducted the sentencing hearing.

oral sex from a probationer during a home visit on February 1, 2017. Defendant pled guilty to Class E felony sexual contact with a probationer. Count one was dismissed.

At the sentencing hearing, Tennessee Bureau of Investigation Special Agent John Hannon testified that he led the investigation at the request of the Anderson County District Attorney General. He began his investigation by interviewing the victim. He collected evidence, including clothing and a towel, and obtained buccal swabs and hair from the victim for DNA testing. On February 2, 2017, Agent Hannon arranged a controlled phone call between the victim and Defendant. During the conversation, the victim told Defendant that she was "confused about what happened" and asked him "if that was going to happen again." Defendant stated that "he did not know how to answer that." The victim asked if "they were going to take it further and have sex." Defendant told the victim "to watch what she says over the phone." Later during the call, Defendant asked the victim if he can have another home visit on February 3, 2017.

After the controlled phone call, Agent Hannon contacted Defendant and set up a meeting at the Anderson County Detention Facility. After reading Defendant his *Miranda* rights, Agent Hannon questioned Defendant about the incident. Special Agent Nick Brown was there as a witness to the interview. According to Agent Hannon, Defendant acted shocked by the allegations and stated that he did not know the victim. Defendant claimed that he was in Campbell County on February 1, 2017, and not in Oliver Springs where Agent Hannon said the victim lived. He claimed that he had never been to the victim's home and did not know where she lived. Agent Hannon stated that Defendant was untruthful during the interview. Agent Hannon executed a search warrant and obtained DNA samples from Defendant using buccal swabs. He said that the sperm collected from the victim's clothing matched Defendant's DNA profile. Agent Hannon also executed a search warrant on Defendant's state-issued cell phone. From Defendant's phone, Agent Hannon obtained messages between Defendant and the victim from January 31, 2017.

During the sentencing hearing, Agent Hannon played a twenty-minute audio recording made by the victim during the February 1, 2017 incident. The victim can be heard asking: "If I'm to do this, can you help me out if I were to mess up in the future?" Defendant stated "uh-huh," which Agent Hannon characterized as an affirmative response. Later, the victim stated: "Whoa, I've got to clean this up. Let me go get a towel. It's got all over my jeans." The parties agreed not to tell anybody about what happened.

On cross-examination, Agent Hannon read from text messages that he extracted from the victim's phone. Exhibit 2 was a list showing dozens of text messages between the victim and other individuals on February 2, primarily concerning the victim going to

an attorney to file a civil suit against Defendant. In one message, the victim stated: "I set him up. I have a 30[-]minute voice recording and all the texts e-mailed to myself because he made me erase texts, so I think I'm going to the police and s[u]ing."

Priscilla Cardwell testified that she prepared the presentence report, which was admitted as an exhibit. The report showed that Defendant was a 31-year-old college graduate in fair mental and physical health, was married with two children and two stepchildren, and was working as a foreman at England Home Furnishings. Defendant had no prior criminal convictions. The "Strong-R" assessment score showed Defendant to be low risk for re-offending. The only statement provided by Defendant was that the offense "was consensual" and that he "did not rape" the victim. The victim impact statement was not returned in time to be included in the report. Ms. Cardwell filed as an addendum to her report a letter from the victim. In the letter, the victim stated that she had been on probation for almost five years prior to being sexually assaulted by Defendant and that during that time she "was clean," was "very productive," had obtained her driver's license, had purchased a car, had paid her bills on time, and had regained rights to see her children. The victim claimed that after Defendant sexually assaulted her, she "relapsed and lost everything."

The presentence report included the written summation of Agent Hannon's investigation. According to Agent Hannon's summation, on January 31, 2017, the victim sent photographs of herself wearing a bra and panties to Defendant, and Defendant responded by saying he wanted to "see more" during a home visit scheduled for the next day. During the home visit, Defendant asked the victim to lift her shirt and pull down her pants. Defendant touched her vagina and breasts. The victim claimed that Defendant "made her perform oral sex on him." Before he left, Defendant made the victim delete the text messages that she sent him. He also instructed the victim not to tell anyone what happened. However, the victim reported the incident the following day, and an investigation commenced. When confronted by investigators, Defendant initially lied about his sexual encounter with the victim.

Defendant presented two character witnesses, Quintin Borders and Christian Kyle. Both claimed that Defendant was a person of good character and exhibited deep remorse about his behavior. At the end of the hearing, Defendant offered an allocution during which he stated what he did "was unacceptable and wrong and unethical." He stated he regretted and accepted the ramifications of his actions. Defendant apologized to the people he hurt and asked for a second chance to allow him to "continue down the right path."

At the conclusion of the hearing, the trial court announced that it had considered the evidence presented at this sentencing hearing, the seven exhibits, the testimony of the

- 3 -

four witnesses, the presentence report, the sentencing principles embodied in Tennessee Code Annotated section 40-35-103, the arguments made as to the alternative sentencing, the nature and characteristics of the criminal conduct involved, the evidence and information offered on enhancing and mitigating factors, and the allocution made by Defendant concerning his potential for rehabilitation or treatment. The court found Defendant to be qualified for diversion and that Defendant's amenability to correction, his criminal record, his social history, and his physical and mental health favored diversion. Concerning the circumstances of the offense, the court found that Defendant was in a position of power, authority, and control over the victim and that, therefore, the circumstances of the offense weighed against diversion. The court found that diversion would not provide a sufficient deterrent to others and would not serve the interest of the public. Based on the factors mentioned, the court denied the application for judicial diversion and ordered the two-year sentence to be served on probation.

Defendant timely appealed.

**Analysis**

Defendant claims the trial court "failed to properly weigh, analyze, and explain on the record, its findings in regards to the common law factors when denying [Defendant's] application for judicial diversion." Defendant also argues that, without diversion, he will have to deal with the stigma and collateral consequences of having a felony criminal conviction. The State argues that the trial court properly "considered all the required diversion factors and sufficiently articulated the reasons for its decision by emphasizing certain factors." We agree with the State.

Upon a finding of guilt, the trial court may defer further proceedings and place a qualified defendant on probation without entering a judgment of conviction. Tenn. Code Ann. § 40-35-313(a)(1)(A) (2018). Once a defendant who is placed on diversion successfully completes probation, the charge will be dismissed. Tenn. Code Ann. § 40-35-313(b)(2) (2018). A "qualified defendant" is a defendant who:

> (a) [i]s found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
>
> (b) [i]s not seeking deferral of further proceedings for any offense committed by any elected or appointed person in the executive, legislative or judicial branch of the state or any political subdivision of the state, which offense was committed in the person's official capacity or involved in the duties of the person's office;

(c) [i]s not seeking deferral of further proceedings for a sexual offense, a violation of § 39-15-502, § 71-6-117, or § 71-6-119, driving under the influence of an intoxicant as prohibited by § 55-10-401, vehicular assault under § 39-13-106 prior to service of the minimum sentence required by § 39-13-106, or a Class A or B felony;

(d) [h]as not previously been convicted of a felony or a Class A misdemeanor for which a sentence of confinement is served; and

(e) [h]as not previously been granted judicial diversion under this chapter or pretrial diversion.

Tenn. Code Ann. § 40-35-313(a)(1)(B)(i) (2018). Sexual contact with a probationer pursuant to Tennessee Code Annotated section 39-16-409 is not a "sexual offense" which would disqualify a defendant from judicial diversion. *See* Tenn. Code Ann. § 40-35-313(a)(1)(B)(ii) (2018).

Judicial diversion is a form of "legislative largess." *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999). Being qualified for diversion under the statute does not entitle a defendant to judicial diversion; instead, the decision whether to grant judicial diversion is left to the trial court's discretion. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014). The defendant bears the burden of proving that he or she is a suitable candidate for judicial diversion. *State v. Faith Renea Irwin Gibson*, No. E2007-01990-CCA-R3-CD, 2009 WL 1034770, at *4 (Tenn. Crim. App. Apr. 17, 2009) (citing *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999); *State v. Baxter*, 868 S.W.2d 679, 681 (Tenn. Crim. App. 1993)).

When determining whether to grant judicial diversion to a qualified defendant, the trial court must consider the following factors:

(a) the accused's amenability to correction; (b) the circumstances of the offense; (c) the accused's criminal record; (d) the accused's social history; (e) the accused's physical and mental health; (f) the deterrence value to the accused as well as others; and (g) whether judicial diversion will serve the interests of the public as well as the accused.

*State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). In addition to the *Parker* and *Electroplating* factors, the trial court may consider the following factors in making its decision: "[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general

reputation, marital stability, family responsibility[,] and attitude of law enforcement." *State v. Anthony Adinolfi*, No. E2013-01286-CCA-R3-CD, 2014 WL 2532335, at *2 (Tenn. Crim. App. June 2, 2014) (quoting *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993)) (internal quotation marks omitted). The record must reflect that the trial court weighed all the *Parker* and *Electroplating* factors against each other, and the trial court must give an explanation of its ruling on the record. *King*, 432 S.W.3d at 326; *Electroplating*, 990 S.W.2d at 229.

We review a trial court's decision regarding judicial diversion under the same standard set forth in *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). *King*, 432 S.W.3d at 324. If the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasoning for granting or denying judicial diversion, then "the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id.* at 327. The trial court need not recite all the *Parker* and *Electroplating* factors when justifying its decision on the record in order to be granted a presumption of reasonableness. *Id.* However, the record should reflect that the trial court considered the factors when rendering its decision and that it identified the relevant factors applicable to the case. *Id.* Once the trial court identifies the relevant factors, it may proceed solely on those. *Id.*

Here, the trial court clearly considered the *Parker* and *Electroplating* factors and identified the relevant factors the court applied to support its decision to deny Defendant's request for judicial diversion. The court's decision is entitled to a presumption of reasonableness, and there is substantial evidence in the record to support the court's decision to deny diversion, including the fact that Defendant abused his position of power, authority, and control over the victim for his own sexual gratification.

## III. Conclusion

The trial court did not abuse its discretion in denying judicial diversion. The judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE